1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
 *dalekgalipo@yahoo.com*
Marcel F. Sincich, Esq (SBN 319508)
 *msincich@galipolaw.com*
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNELEY RABOT; DANELLE RABOT; DAPHNE RABOT; DESIREE RABOT, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF LOS ANGELES; and DOES 1-10, inclusive, <br><br> Defendants. | CASE No.: 2:20-cv-10562 <br><br> **PLAINTIFFS' COMPLAINT FOR DAMAGES** <br> 1. 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Search/Unlawful Entry) <br> 2. 42 U.S.C. § 1983 (Fourth Amendment – Unreasonable Detention) <br> 3. 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force) <br> 4. 42 U.S.C. § 1983 (Fourth Amendment – Denial of Medical Care) <br> 5. 42 U.S.C. § 1983 (Fourteenth Amendment – Denial of Familial Relationship) <br> 6. 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy) <br> 7. 42 U.S.C. § 1983 (Municipal Liability – Failure to Train) <br> 8. 42 U.S.C. § 1983 (Municipal Liability – Ratification) <br> 9. False Arrest/False Imprisonment <br> 10. Battery (Survival/Wrongful Death) <br> 11. Negligence (Wrongful Death/Negligent Infliction of Emotional Distress) <br> 12. Violation of Cal. Civil Code § 52.1 <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs DONNELEY RABOT; DANELLE RABOT; DAPHNE RABOT; and DESIREE RABOT for their Complaint against COUNTY OF LOS ANGELES; and DOES 1-10, inclusive and hereby alleges as follows:

## INTRODUCTION

1.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the shooting of Decedent, DOMINADOR RABOT, on October 22, 2019.  The Defendants are liable under state law pursuant to Gov't Code §§ 815.2(a) and 820(a), and Cal. Civil Code § 52.1. The Defendants are liable under the Constitution of the United States pursuant to the Fourth and Fourteenth Amendments brought under 42 U.S.C. § 1983.

2.      Defendant probation officers caused Plaintiffs' and DOMINADOR RABOT'S injuries when they used excessive and unreasonable force and killed DOMINADOR RABOT.

3.      Does 1-7, inclusive, ("DOE OFFICERS") caused various injuries herein by integrally participating or failing to intervene in the incident, and by engaging in other acts and/ or omissions around the time of the incident.

4.      Defendants COUNTY OF LOS ANGELES and DOES 8-10, inclusive, also caused various injuries and are liable under state and federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

5.      This action is in the public interest as PLAINTIFFS seek by means of this civil rights action to hold accountable those responsible for the shooting, and severe emotional distress inflicted by DEFENDANTS, and COUNTY OF LOS ANGELES' ratification, failure to train, and policy of

1 | inaction in the face of serious constitutional violations.

2

3 | **THE PARTIES**

4 | 6.     At all relevant times, Decedent, DOMINADOR RABOT ("Mr.

5 | RABOT"), was an individual residing in Los Angeles County, California.

6 | 7.     At all relevant times, Plaintiff DONNELEY RABOT was an

7 | individual residing in Los Angeles County, California, and the natural son of

8 | Mr. RABOT.  DONNELEY RABOT brings this action both individually and

9 | as successor-in-interest to Mr. RABOT.

10 | 8.     At all relevant times, Plaintiff DANELLE RABOT was an

11 | individual residing in Los Angeles County, California, and the natural

12 | daughter of Mr. RABOT.  DANELLE RABOT brings this action as

13 | successor-in-interest to Mr. RABOT.

14 | 9.     At all relevant times, Plaintiff DAPHNE RABOT was an

15 | individual residing in Los Angeles County, California, and the natural

16 | daughter of Mr. RABOT.  DAPHNE RABOT brings this action as successor-

17 | in-interest to Mr. RABOT.

18 | 10.     At all relevant times, Plaintiff DESIREE RABOT was an

19 | individual residing in Los Angeles County, California, and the natural

20 | daughter of Mr. RABOT.  DESIREE RABOT brings this action as successor-

21 | in-interest to Mr. RABOT.

22 | 11.     Defendant COUNTY OF LOS ANGELES ("COUNTY") is and

23 | was a duly organized public entity, form unknown, existing under the laws of

24 | the State of California.  COUNTY is a chartered political subdivision of the

25 | State of California that is within this judicial district with the capacity to be

26 | sued.  COUNTY is responsible for the actions, omissions, policies,

27 | procedures, practices, and customs of its various agents and agencies,

28 | including the County of Los Angeles Probation Department.  At all relevant

times, Defendant COUNTY was responsible for assuring that actions, omissions, policies, procedures, practices, and customs of the County of Los Angeles Probation Department and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was the employer of DOES 1-10, inclusive.

12.     Defendants DOES 1-7, inclusive, are probation officers for the County of Los Angeles Probation Department ("DEFENDANT OFFICERS").  At all relevant times, these Defendants were acting under color of law within the course and scope of their duties as County of Los Angeles Probation Department officers.  At all relevant times, DOES 1-7, inclusive, were acting with the complete authority and ratification of their principal, COUNTY.

13.     Defendants DOES 8-10, inclusive, are managerial, supervisorial, or policymaking employees of the County of Los Angeles Probation Department who were acting under color of law within the course and scope of their duties as supervisorial officers for the County of Los Angeles Probation Department.  DOES 8-10, inclusive, were acting with the complete authority of their principal, COUNTY.

14.     PLAINTIFFS are ignorant of the true names and capacities of Defendants DOES 1-10, inclusive, and therefore sues these DEFENDANTS by such fictitious names.  PLAINTIFFS will amend the complaint to allege the true names and capacities of those defendants when the same has been ascertained.  PLAINTIFFS are informed believes, and on that basis alleges, that DOES 1-10, inclusive, and each of them, are responsible in some manner for the occurrences alleged herein and proximately caused PLAINTIFFS' damages.

15.     On information and belief, DOES 1-10, inclusive, were at all relevant times residents of the County of Los Angeles, California.

16.   PLAINTIFFS are informed and believe, and on that basis alleges, that DEFENDANTS acted at all times mentioned herein as the actual and/or ostensible agents, employees, servants or representatives of each other and, in doing the activities alleged herein, acted within the scope of their authority as agents and employees, and with the permission and consent of each other.

17.   PLAINTIFFS are informed and believe, and on that basis alleges, that at all times mentioned herein all DEFENDANTS acted under color of law, statute, ordinance, regulations, customs and usages of the State of California and COUNTY.

18.   All DEFENDANTS who are natural persons, including DOES 1-10, inclusive, are sued individually and/or in his/her capacity as officers, deputies, investigators, sergeants, captains, commanders, supervisors, and/ or civilian employees, agents, policy makers, and representatives of the COUNTY and the County of Los Angeles Probation Department.

19.   PLAINTIFF DONNELEY RABOT suffered severe emotional distress as a direct and proximate result of the actions and inactions of Defendant DOES 1-10, inclusive.  Defendant DOES 1-10, inclusive, are directly liable for PLAINTIFF DONNELEY RABOT'S injuries under state law.

20.   Mr. RABOT suffered serious bodily injury and death as a direct and proximate result of the actions and inactions of Defendant DOES 1-10, inclusive.  Defendant DOES 1-10, inclusive, are directly liable for Mr. RABOT'S injuries under federal law pursuant to 42 U.S.C. § 1983 and state law.

21.   Plaintiffs DONNELEY RABOT; DANELLE RABOT; DAPHNE RABOT; and DESIREE RABOT suffered the loss of their natural father as a direct and proximate result of the actions and inactions of Defendant DOES

1-10, inclusive.  Defendant DOES 1-10, inclusive, are directly liable for PLAINTIFFS' under federal and state law.

22.  On April 3, 2020, PLAINTIFFS timely served their claims for damages with the COUNTY pursuant to applicable sections of the California Government Code.

23.  On May 26, 2020, PLAINTIFFS' claims were denied by COUNTY by written notices of rejection of claims.

## JURISDICTION AND VENUE

24.  The Court has jurisdiction over PLAINTIFFS' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because PLAINTIFFS assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution.  This Court has supplemental jurisdiction over PLAINTIFFS' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

25.  Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26.  PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 25, inclusive, as if fully set forth herein.

27.  On October 22, 2019, at approximately 12:45 p.m., DEFENDANT OFFICERS arrived at Mr. RABOT's house, in Carson, California.

28.  Mr. RABOT'S four children lived with him at the residence at

the time.  Plaintiff DONNELEY RABOT was home in his room when the DEFENDANT OFFICERS arrived.

29.     The DEFENDANT OFFICERS forcibly and unlawfully entered Mr. RABOT's home from the back of the house without consent, permission, adequate presentation of warrant, exigent circumstances, or even a notice to Mr. RABOT regarding their arrival at his home.

30.     The DEFENDANT OFFICERS escalated the situation then used excessive and unreasonable force, including deadly force, against Mr. RABOT when the DEFENDANT OFFICERS fired multiple bullets striking Mr. RABOT.

31.     The DEFENDANT OFFICERS failed to give adequate commands to Mr. RABOT, and failed to give Mr. RABOT an opportunity to comply with commands prior to their use of excessive and unreasonable force.

32.     The DEFENDANT OFFICERS failed to give Mr. RABOT a verbal warning that deadly force would be used prior to the use of deadly force, and failed to give Mr. RABOT an opportunity to heed any warning prior to their use of excessive and unreasonable force.

33.     At the time that the DEFENDANT OFFICERS used excessive and unreasonable deadly force against Mr. RABOT, Mr. RABOT was not an immediate threat of death or serious bodily injury to any person, including the DEFENDANT OFFICERS.  Further, there were reasonable alternatives to the use of deadly force.

34.     As a direct result of being shot, Mr. RABOT suffered multiple gunshot wounds, suffered serious bodily injury, including pain and suffering, loss of life, and loss of enjoyment of life.

35.     Mr. RABOT was shot by the DEFENDANT OFFICERS in the hallway of his house, near the outside of Plaintiff DONNELEY RABOT'S

bedroom door.

36.     During several of the shots fired by the DEFENDANT
OFFICERS, Plaintiff DONNELEY RABOT watched his father getting shot
by the DEFENDANT OFFICERS.

37.     Mr. RABOT fell to the ground right in front of Plaintiff
DONNELEY RABOT, with visible gunshot wounds to his body.

38.     As a direct result of watching his father getting shot by the
DEFENDANT OFFICERS, Plaintiff DONNELEY RABOT suffered severe
emotional distress.

39.     Thereafter, the DEFENDANT OFFICERS failed to timely render
and failed to timely summon medical care for Mr. RABOT, who bleed to
death on the ground in his own home.

40.     The DEFENDANT OFFICERS stepped over Mr. RABOT'S
down body and entered Plaintiff DONNELEY RABOT'S bedroom.

41.     The DEFENDANT OFFICERS took Plaintiff DONNELEY into
custody, handcuffed him, and escorted him barefoot past his father's body
and into a patrol vehicle on the street.

42.     Plaintiff DONNELEY RABOT was unreasonably detained and
held without reasonable suspicion or probable cause.

43.     The use of force against Mr. RABOT was excessive and
objectively unreasonable under the circumstances, especially because Mr.
RABOT did not pose an immediate threat of death or serious bodily injury to
anyone at the time of the shootings, there were less lethal alternatives
available, and no warning that deadly force was going to be used was given
prior to the use of deadly force.  DEFENDANT OFFICERS discharged their
firearms with a purpose to harm and a specific intent to violate Mr.
RABOT'S constitutional rights, evidenced by their deliberate indifference
and reckless disregard for Mr. RABOT'S constitutional rights.

# FIRST CLAIM FOR RELIEF

## Fourth Amendment—

## Unreasonable Search/Unlawful Entry (42 U.S.C. § 1983)

(PLAINTIFFS against DEFENDANT OFFICERS)

44.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 43 of this Complaint with the same force and effect as if fully set forth herein.

45.     On information and belief, DEFENDANT OFFICERS did not have a warrant to search PLAINTIFFS or Mr. RABOT's person or property; did not present any warrant to PLAINTIFFS or Mr. RABOT upon their arrival at their home; did not have exigent circumstances to execute a warrantless search; and did not even provide adequate notice to PLAINTIFFS or Mr. RABOT upon their arrival at his home.  Instead, DEFENDANT OFFICERS barged into PLAINTIFFS and Mr. RABOT's home from the back of the house.

46.     PLAINTIFFS and Mr. RABOT never waived his Fourth Amendment rights by giving voluntary and intelligent consent to a warrantless search of his person or property.

47.     DEFENDANT OFFICERS unlawfully and unreasonably entered onto PLAINTIFFS and Mr. RABOT's property and into PLAINTIFFS and Mr. RABOT's home from the back of the house.

48.     The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFFS and Mr. RABOT and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT OFFICERS.

49.     As a result of their misconduct, DEFENDANT OFFICERS are liable for PLAINTIFFS' and Mr. RABOT's injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

50.     Plaintiffs seek survival and wrongful death and punitive damages, as well as other damages permitted by law for the violation of PLAINTIFFS and Mr. RABOT's rights.  Plaintiffs also seek reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Fourth Amendment—

### Unreasonable Detention (42 U.S.C. § 1983)

(Plaintiff DONNELEY RABOT against DEFENDANT OFFICERS)

51.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 50 of this Complaint with the same force and effect as if fully set forth herein.

52.     DEFENDANT OFFICERS detained Plaintiff DONNELEY RABOT without reasonable suspicion and arrested him without probable cause.

53.     DEFENDANT OFFICERS acted intentionally when they stepped over Mr. RABOT'S body, after using excessive and unreasonable force on him, took Plaintiff DONNELEY RABOT into custody, and escorted him past his father's body and into a patrol vehicle.

54.     DEFENDANT OFFICERS acted intentionally when they kept Plaintiff DONNELEY RABOT in the patrol vehicle without reasonable suspicion or probable cause for an appreciable amount of time.

55.     DEFENDANT OFFICERS also acted intentionally when they transported Plaintiff DONNELEY RABOT to the police station and held him in a room at the police station without reasonable suspicion or probable cause for several hours.

56.     Taking Plaintiff DONNELEY RABOT into custody and detaining him for several hours without even telling him the condition of his father who he witnessed being shot by the DEFENDANT OFFICERS was an unreasonable

seizure.

57.    Detaining Plaintiff DONNELEY RABOT without reasonable suspicion or probable cause is a violation of Plaintiff's particular rights be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiff under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.  Further, the scope and manner of the detention was unreasonable.

58.    The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff DONNELEY RABOT and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT OFFICERS.

59.    As a result of their misconduct, DEFENDANT OFFICERS are liable for Plaintiff DONNELEY RABOT'S injuries, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

60.    Plaintiff bring this claim individually, and seeks damages for the violation of his rights.  Plaintiff also seeks reasonable attorneys' fees and costs.

## **THIRD CLAIM FOR RELIEF**
### **Fourth Amendment –**
### **Excessive Force (42 U.S.C. § 1983)**
**(By PLAINTIFFS against DEFENDANT OFFICERS)**

54.    PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 53, inclusive, as if fully set forth herein.

55.    PLAINTIFFS bring this claim for relief in their capacity as the successors in interest of Mr. RABOT, for whom there is no estate opened, under California Code of Civil Procedure § 377.30.  This claim for relief arose in Mr. RABOT'S favor, and Mr. RABOT would have been the plaintiff

Case No. 2:20-cv-10562

COMPLAINT FOR DAMAGES

with respect to this cause of action had he lived.

56.     DEFENDANT OFFICERS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

57.     The Fourth Amendment of the United States Constitution, as applied to State Actors by the Fourteenth Amendment, provides the right of every person to be free from the use of excessive force by police officers.

58.     DEFENDANT OFFICERS failed to employ tactics to de-escalate the situation, failed to give Mr. RABOT the time and space to understand the presence of law enforcement, failed to give Mr. RABOT proper commands and the time to comply with those commands, failed to give Mr. RABOT the opportunity to cooperate with law enforcement instructions, and failed to give Mr. RABOT a verbal warning prior to the use of deadly force even though it was feasible to do so.

59.     Mr. RABOT was not an immediate threat of death or serious bodily harm to any person at the time the use of excessive and unreasonable force was used against him by the DEFENDANT OFFICERS. Mr. RABOT was not attempting to evade or resist by flight. The DEFENDANT OFFICERS were not responding to a serious or violent crime.  Further, there were reasonable alternatives available to the DEFENDANT OFFICERS at the time.  Further, Mr. RABOT was unassuming at 5'2", 144 pounds, and 57 years old.

60.     DEFENDANT OFFICERS used excessive and unreasonable force, including deadly force, against Mr. RABOT when they repeatedly fired their weapons at Mr. RABOT striking him multiple times and killing him.  DEFENDANT OFFICERS' acts and omissions deprived Mr. RABOT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. RABOT under the Fourth Amendment to the

11

1 | United States Constitution and applied to state actors by the Fourteenth
2 | Amendment.

3 | 61.   As a direct result of the aforesaid acts and omissions of
4 | DEFENDANT OFFICERS, Mr. RABOT suffered great physical and mental
5 | injury, fear and emotional distress, and loss of enjoyment of life and loss of
6 | life.

7 | 62.   The conduct of DEFENDANT OFFICERS alleged above was
8 | willful, wanton, malicious, and done with reckless disregard for the rights
9 | and safety of Mr. RABOT and warrants the imposition of exemplary and
10 | punitive damages in an amount according to proof.

11 | 63.   As a result of their misconduct, DEFENDANT OFFICERS are
12 | liable for Plaintiffs, either because they were integral participants in the
13 | wrongful detention and arrest, or because they failed to intervene to prevent
14 | these violations.

15 | 64.   PLAINTIFFS seek survival damages, including but not limited to
16 | pre-death pain and suffering, loss of life, and loss of enjoyment of life, under
17 | this claim.  PLAINTIFFS also seek attorneys' fees and costs under this
18 | claim.

19 |

20 | **FOURTH CAUSE OF ACTION**
21 | **Fourth Amendment –**
22 | **Denial of Medical Care (42 U.S.C. § 1983)**
23 | (By PLAINTIFFS against DEFENDANT OFFICERS)

24 | 65.   PLAINTIFFS repeat and reallege each and every allegation of
25 | paragraphs 1 through 64, inclusive, as if fully set forth herein.

26 | 66.   PLAINTIFFS bring this claim for relief in their capacity as the
27 | successors in interest of Mr. RABOT, for whom there is no estate opened,
28 | under California Code of Civil Procedure § 377.30.  This claim for relief

arose in Mr. RABOT'S favor, and Mr. RABOT would have been the Plaintiff with respect to this cause of action had he lived.

67.    DEFENDANT OFFICERS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

68.    The denial of medical care by DEFENDANT OFFICERS deprived Mr. RABOT of his right to be secure in his person against unreasonable searches and seizures guaranteed by the Fourth Amendment to the U.S. Constitution, as applied to the states by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

69.    DEFENDANT OFFICERS failed to provide timely medical care to Mr. RABOT and failed to timely summon medical care for Mr. RABOT. DEFENDANT OFFICERS denial of medical care was a cause of Mr. RABOT'S pain, suffering and death.

70.    As a direct result of the aforesaid acts and omissions of DEFENDANT OFFICERS suffered great physical and mental injury, fear and emotional distress leading to his death and the loss of enjoyment of life.

71.    The conduct of DEFENDANT OFFICERS alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and warrants the imposition of exemplary damages in an amount according to proof.

72.    As a result of their misconduct, DEFENDANT OFFICERS are liable for Plaintiffs, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

73.    PLAINTIFFS seek survival damages under this claim. PLAINTIFFS also seek attorney fees under this claim.

**FIFTH CLAIM FOR RELIEF**

**Fourteenth Amendment – Denial of Familial Relationship (42 U.S.C. § 1983)**

(By PLAINTIFFS against DEFENDANT OFFICERS)

74.    PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 73, inclusive, as if fully set forth herein.

75.    PLAINTIFFS had a cognizable interest under the Due Process Clause of Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their father, Mr. RABOT, Decedent.

76.    The aforementioned actions of DEFENDANT OFFICERS, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of PLAINTIFFS, and with purpose to harm unrelated to any legitimate law enforcement objective.

77.    As a direct and proximate result of these actions, Mr. RABOT experienced pain and suffering and eventually died.  DEFENDANT OFFICERS thus violated the substantive due process rights of PLAINTIFFS to be free from unwarranted interference with their familial relationship with Mr. RABOT.

78.    As a direct and proximate cause of the acts of DEFENDANT OFFICERS, PLAINTIFFS suffered emotional distress, mental anguish, and pain.  PLAINTIFFS have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. RABOT, and will continue to be so deprived for the remainder of their natural lives.

79.    The conduct of DEFENDANT OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr.

RABOT and PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages as to DEFENDANT OFFICERS.

80.    PLAINTIFFS bring this claim for the interference with their relationship with their father, Mr. RABOT, and seek wrongful death damages for the violation of their rights.  PLAINTIFFS also seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF
### Municipal Liability –
### Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
(By PLAINTIFFS against COUNTY)

81.    PLAINTIFFS repeat and re-allege each and every allegation of paragraphs 1 through 80, inclusive, as if fully set forth herein.

82.    DEFENDANT OFFICERS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

83.    The acts of DEFENDANT OFFICERS deprived Mr. RABOT and Plaintiffs of their particular rights under the United States Constitution.

84.    DEFENDANT OFFICERS acted pursuant to an expressly adopted official policy or longstanding practice or custom of the DEFENDANT COUNTY, and DOES 8-10, inclusive.

85.    On information and belief, DEFENDANT OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with deprivation of Mr. RABOT'S rights.

86.    DEFENDANT OFFICERS together with other COUNTY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

(a)    Using excessive and unreasonable force, including deadly

force on persons who do not pose a risk of imminent death or serious bodily injury to others.

(b)     Failing to use and exhaust reasonable alternatives to the use of deadly force.

(c)     Failing to give adequate commands and time to comply with those commands.

(d)     Failing to give adequate verbal warning that the use of deadly force will be used and time to heed such a warning.

(e)     Providing inadequate training regarding the use of force, including deadly force, use of force, and use of reasonable alternatives to the use of deadly force.

(f)     The handling of situations involving persons suffering from a mental crisis in accordance with their constitutional rights.

(g)     Providing inadequate training and policies, including sustainment training, enforcement of the training when it does exist, and re-training, regarding the use of force, the use of deadly force, handling situations involving persons suffering from mental crisis, and de-escalation.

(h)     Employing and retaining as law enforcement officers, individuals such as DEFENDANT OFFICERS at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force.

(i)     Inadequately supervising, training, controlling, assigning, and disciplining COUNTY officers, and other personnel, including DEFENDANT OFFICERS who COUNTY knew or in the exercise of reasonable care should have known, had the aforementioned propensities or character traits.

(j)     Maintaining grossly inadequate procedures for reporting,

supervising, investigating, reviewing, disciplining and controlling misconduct by officers of the COUNTY.

(k)   Ratifying unconstitutional conduct and failing to adequately discipline COUNTY officers for the above-mentioned categories of misconduct, including inadequate discipline and "slaps on the wrist," discipline that is so slight as to be out of proportion with the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct.

(l)   Announcing that unjustified shootings are "within policy" even when they are later determined in court to be unconstitutional and refusing to discipline, terminate and retrain officers involved in unconstitutional conduct.

(m)   Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officers do not report other officers' errors, misconduct, or crimes.  Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officer's wrongdoing.

(n)   Maintaining a policy of inaction and an attitude of indifference towards police shootings, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in shootings.

(o)   Upon information and belief, COUNTY has an unofficial policy, practice and/or custom of finding almost all—if not all—of its officer involved shootings to be within policy, of not disciplining its officers involved in shootings, or not retraining or firing officers involved in shootings, and of not recommending criminal charges

against their officers involved in excessive and unreasonable officer-involved shootings.  As a result, officers involved in excessive uses of deadly force are allowed back to patrol the streets even though COUNTY knew, or should have known, that these officers have a propensity for using excessive deadly force against the citizens that the officers are supposed to protect and serve, especially against minorities and those in a mentally crisis.

(p)    Upon information and belief, as a result of COUNTY policy, custom and/or practices, officers know that if they use deadly excessive force against someone, they will not be disciplined and their use of force will be found within policy, which results in a significant number of COUTNY officers being involved in numerous shootings. This policy, custom and/or practice was established by supervising and managerial employees of COUNTY, specifically, those employees tasked with determining whether officer-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against officers who use excessive deadly force.

(q)    Upon information and belief, this policy, custom and/or practice long lasting and persistent, and existed well before Mr. RABOT was killed by the DEFENDANT OFFICERS.  This policy, custom and/or practice was established so that COUNTY officers do not bear the responsibility for the people that they use excessive deadly force against.  This policy, custom and/or practice exists so that the public does not have such a negative perception of COUNTY and its law enforcement departments and so that COUNTY can avoid the repercussions associated with its officers' use of excessive deadly

force against citizens, including negative publicity, avoiding criminal prosecution and avoiding civil liability.  A significant reason that this policy, custom and/or practice was established was to avoid COUNTY being liable, under a theory of vicarious liability, for the uses of excessive and unreasonable deadly force by its employees.  In other words, there is a large financial incentive for COUNTY to erroneously determine that most, if not all, of its officers' uses of deadly force are within policy.  If COUNTY, through its policymakers and supervisors, would admit that their officers were at fault for using excessive and unreasonable deadly force, then COUNTY is well aware of how much they would have to pay for any associated litigation.

87.     By reason of the aforementioned acts and omissions, PLAINTIFFS have suffered loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Mr. RABOT, and Mr. RABOT endured substantial pain and suffering, loss of enjoyment of life, and death.

88.     DEFENDANTS COUNTY, and DOES 8-10, inclusive, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged herein.  Despite having knowledge as stated above, these DEFENDANTS condoned, tolerated and through actions and inactions thereby ratified such policies.  Said DEFENDANTS also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. RABOT and other individuals similarly situated.

89.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DEFENDANTS COUNTY, and DOES 8-10, inclusive, acted with intentional, reckless, and callous disregard

for the Mr. RABOT'S Constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by DEFENDANTS COUNTY and DOES 8-10, inclusive, were affirmatively linked to and were a significantly influential force behind Mr. RABOT'S injuries.

90.    The following are a few examples of DEFENDANT COUNTY'S unconstitutional customs, practices and policies, and continued misconduct:

(a)    The October 6, 2020 shooting of Nicholas Burgos, a 39-year-old man shot nine (9) times in the UCLA Harbor Hospital Mental Care Center.

(b)    The August 31, 2020 shooting death of Dijon Kizzee.

(c)    The June 26, 2019 shooting of Timothy Neal in his home; Case No. 2:20-cv-06315-CBM-JC.

(d)    The July 3, 2019 shooting death of the unarmed Rickie Starks; Case No. 19STCV38462.

(e)    The August 16, 2017 shooting death of Kenneth Lewis, Jr.; Case No.: 2:18-cv-04910-CBM-SK.

(f)    In *Berry, et al. v. County of Los Angeles, et al.*, Case No.: 15-cv-09715-BRO (KSx); in events captured on video, numerous Los Angeles County deputies was beat, pepper sprayed, tased, and fired over 30 bullets without warning at John Berry while seated in his car and killing him.  Upon information and belief, the County found that the deputies use of force was within policy, and none of the deputies were disciplined, reprimanded, retrained, suspended, or otherwise penalized for their actions.

(g)    In *V.W., et al. v. County of Los Angeles, et al.*, Case No.: 2:18-cv-03684-FMO-ARG; on February 4, 2018 Deputy Gregory Van Hoesen shot and killed the 16-year-old Anthony Weber, shooting him

in the back while unarmed.

(h)     In *K.C.R., et al. v. County of Los Angeles, et al.*, Case No.: 2:13-cv-03806-PSG-SS, on June 21, 2012, the unarmed Kenneth Rivera III was shot and killed by Deputy Norma Silva.

(i)     In *C.M., et al. v. County of Los Angeles, et al,*, Case No.: 2:17-cv-05135-VAP-AGR, on August 2, 2016, Deputy Jeffrey Brito shot and killed the unarmed William Bowers.  On information and belief, Deputy Brito was not disciplined, reprimanded, retrained, suspended, or otherwise penalized for his actions.

(j)     In *Mitchell v. County of Los Angeles, et al.*, Case No.: CV-8421-RJK (AWx), Defendant COUNTY argued that the use of deadly force against an unarmed civilian (Robert Mitchell) was reasonable; the jury found otherwise, returning a $4,000,000 verdict after finding that Deputy Rick Manes used excessive and unreasonable force when he shot the unarmed Mr. Mitchell in the back six times, killing him. Deputy Manes was not disciplined or retrained for his use of deadly force.

(k)     In *Gutierrez, et al. v. County of Los Angeles, et al.*, Case No.: CV-10-7608 PSG (AJWx), a jury found that Deputy David Salazar used excessive and unreasonable force when he shot and killed Efrain Gutierrez, and awarded Mr. Gutierrez' family $2,000,000. Deputy Salazar was not disciplined or retrained for his use of deadly force.

(l)     In *Beets v. County of Los Angeles, et al.*, Case No.: KC-057667, a jury determined that the use of deadly force by the defendant County deputy, was excessive and unreasonable under the circumstances, and returned a $1,035,000 verdict in favor of the plaintiff.

1

2

3

4

5

 (m) In *Jacobo, et al. v. County of Los Angeles, et al.*, Case No.: CV-11-7212 GW (SSx), on August 8, 2009, County Deputy Mat Taylor shot and killed Ezequiel Jacobo, who was unarmed.  Police reports confirmed that Mr. Jacobo was unarmed.  Deputy Taylor was not disciplined or retrained for shooting Mr. Jacobo.

6

7

8

9

10

 (n) In *Lobrono, et al. v. County of Los Angeles, et al.*, Case No.: CV-13-03838, on February 1, 2013, County Deputy Ray Huang shot Michael Lobrono, who was unarmed.  Police reports confirmed that Mr. Lobrono was unarmed.  Deputy Huang was not disciplined or retrained for his use of deadly force.

11

12

13

14

15

16

 (o) In *Sanchez v. County of Los Angeles, et al.*, Case No.: CV 13-0383; on April 20, 2013, County Deputy Christopher Gomez shot Chalino Sanchez, who was unarmed and riding his bicycle at the time of the shooting.  Police reports confirmed that Mr. Sanchez was unarmed.  Deputy Gomez was not disciplined or retrained for his use of deadly force.

17

18

19

20

21

22

 (p) In *N.K.A., et al. v. County of Los Angeles, et al.*, Case No.: CV 13-05507; on May 11, 2013, County Deputy Luis Mendoza shot and killed Rigoberto Arceo, who was unarmed and had his hands up at the time of the shooting.  Police reports confirmed that Mr. Arceo was unarmed.  Deputy Mendoza was not disciplined or retrained for his use of deadly force.

23

24

25

26

27

28

 (q) In *D.A.B., et al. v. County of Los Angeles, et al.*, Case No.: CV-14-05207 FMO (ASx); on May 23, 2013, County Deputies Dru Strong and Gregory Rodriguez shot and killed Rashawn Brown, who, according to percipient witnesses, was unarmed at the time he was shot.  Deputies Strong and Rodriguez were not disciplined or retrained for their use of deadly force.

(r)     In *Gonzalo Martinez v. County of Los Angeles, et al.*, Case No.: 2:14-cv-05456-DSF-MAN, County Deputy Cuauhtemoc Gonzalez discharged his weapon at a moving vehicle, striking Gonzalo Martinez, who was an unarmed backseat passenger.  Deputy Gonzalez was not disciplined or retrained for his use of deadly force.

(s)     In *Belia C.M., et al. v. County of Los Angeles, et al.*, Case No.: 2:15-cv-09585-SJO-FFM, Deputy Espinosa shot and killed Tony C.M., who was unarmed at the time of the shooting.  On information and belief, Deputy Espinosa as not disciplined or retrained for his use of deadly force.

(t)     In *Marian Amaya, et al., v. County of Los Angeles, et al.*, Case No.: VC062384, on information and belief, County deputies shot and killed Emiliano Amaya, with shots to Mr. Amaya's back.  On information and belief, the deputies were not disciplined or retrained for their use of deadly force.

(u)     The August 4, 2013 shooting of the unarmed Gonzalo Martinez; Case No.: 2:14-cv-05456-DSF-MAN.

91.     The acts of each of DEFENDANTS DOES 8-10, inclusive, were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants imposition of exemplary and punitive damages as to DOES 8-10, inclusive.

92.     By reason of the aforementioned acts and omissions of DEFENDANTS COUNTY and DOES 8-10, inclusive, Mr. RABOT suffered pain and suffering, loss of enjoyment of life, and loss of life.

93.     Accordingly, DEFENDANTS COUNTY and DOES 8-10, inclusive, each are liable for compensatory damages under 42 U.S.C. § 1983.

94.     PLAINTIFFS bring this claim and seek survival damages,

including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under this claim.

### SEVENTH CLAIM FOR RELIEF

**Municipal Liability for Failure to Train (42 U.S.C. §1983)**

(By PLAINTIFFS against COUNTY)

95.    PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 94 of this Complaint with the same force and effect as if fully set forth herein.

96.    DEFENDANT OFFICERS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

97.    The acts of DEFENDANT OFFICERS deprived Mr. RABOT of his particular rights under the United States Constitution.

98.    On information and belief, COUNTY failed to properly and adequately train DEFENDANT OFFICERS including but not limited to, with regard to the use of physical force, less than lethal force, and lethal force; the use of reasonable alternatives to the use of deadly force; proper communication, proper warning; utilizing time, space, distance, cover and concealment; pre-shooting tactics, techniques, and procedures; de-escalation; dealing with situations in which a person is experiencing a mental crisis; not waiting for sufficient assets, equipment and personnel, including mental health crisis teams to arrive before engaging in situations; controlling officer emotions and fears including inadequate "warrior training" that imbues officers with irrational fears about every situation and encourages excessive and unreasonable force and overreacting to a situation; inappropriate "shot/don't shoot" scenarios in training that promote the use of unreasonable

force; continually assessing a situation to justify every shot fired; and providing medical care to person they have injured.

99.    The training policies of DEFENDANT COUNTY were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including de-escalation techniques, the use of less than lethal and lethal force, and pre-shooting tactics.

100.   DEFENDANT COUNTY has numerous officer-involved shootings annually.  COUNTY was aware that there was a reoccurring problem with their officers shooting individuals, instead of employing proper de-escalation techniques.  In other words, COUNTY was aware that there was a problem involving numerous officer-involved shootings which could have been reasonably avoided had the officers employed well-known and accepted law enforcement tactics and techniques to avoid using unnecessarily and excessive deadly force against these individuals by COUNTY employees.

101.   The training that COUNTY law enforcement officers, including DEFENDANT OFFICERS, received with regards to using deadly force was inadequate because it has continuously resulted in numerous unreasonable uses of deadly force by COUNTY officers against individuals (going back at least five (5) years).  Further, the training that COUNTY officers, including DEFENDANT OFFICERS, received with regards to using deadly force was inadequate because it failed to implement well known and accepted police tactics and techniques for dealing with individuals without having to use deadly force against them.  Theses well known and accepted police practices and techniques are routinely used to train law enforcement from other agencies such as the Los Angeles Police Department and the California Highway Patrol.

102.   DEFENDANT COUNTY'S failure to train includes not having

training for officers to handle the usual and recurring situations with which they must deal; not providing adequate time and resources for officers to train, when the training does exist, so that the officers can rely on that training during use of force incidents; not enforcing the basic training standards, when they do exist, that are designed to prevent officers from using excessive and unreasonable force; not adequately providing recurring training so that officers do not lose necessary perishable skills, and not re-training officers who have used force in the field.

103.   DEFENDANT COUNTY has no training or has inadequate training with regard to the following:

(a)     Effective communication to enable a peace officer to gain cooperation and voluntary compliance in stressful situations including when confronting a hostile subject.

(b)     A law enforcement officer's responsibility to effectively communicate both in a professional demeanor and with words resulting in improved safety.

(c)     Effective communication as a basic element of the use of force with the goal of law enforcement is to gain voluntary compliance without resorting to physical force.

(d)     The use of deadly force as the most serious decision a peace officer may ever have to make.  Such a decision should be guided by the reverence for human life and, used only when other means of control are unreasonable or have been exhausted.

(e)     Reverence for life as the foundation on which the use of deadly force rests.  Deadly force as always the last resort used in the direst of circumstances.  The authority to use deadly force as an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously.  In the law

1   enforcement/community partnership, the expectation that peace

2   officers are self-disciplined and accountable.

3        (f)     Self-control as one of a peace officer's greatest assets in

4   dealing with a person or a situation.

5        (g)     Unreasonable fear includes overreactions to true potential

6   threats as well as reactions to unreal threats based on prejudice or poor

7   application of past experience.

8        (h)     Unreasonable fear can be responsible for inappropriate

9   responses such as a failure to respond or responding inappropriately

10  (using unreasonable force).

11       (i)     Unreasonable force occurs when the type, degree, and

12  duration of force employed was not necessary nor appropriate.

13       (j)     The community expects that its peace officers will use

14  only reasonable amounts of force.  Likewise, it expects that someone,

15  including peace officers, will intervene if reasonable force is exceeded.

16       (k)     Learning the behavior signs and indicators of various

17  special conditions that assist officers in identifying the proper

18  intervention to bring the situation to a quick and safe conclusion.  Take

19  control of a situation by using proper communication techniques for

20  persons with disabilities.

21       (l)     Recognition of cues and other indicators in order to make

22  appropriate decisions regarding intervention strategies.  To the extent

23  possible, responding officers should observe the behavior exhibited by

24  the person in an effort to determine what is happening and what might

25  be prompting the observed behavior.

26       (m)     Other techniques to the use of deadly force include but are

27  not limited to de-escalation, communication, conflict resolution,

28  defensive tactics, handcuffing and restraints, control devices and

techniques, batons, tear gas, OC spray, pepper projectile, kinetic energy projectile, and use of a canine.

(n)     An officer's subjective fear of future harm alone is insufficient as an imminent threat.  An imminent threat is one that requires instant attention.

(o)     Responding officers should de-escalate the situation by introducing themselves and attempt to obtain the person's name, be patient, polite, clam, courteous and avoid overreacting, speak and move slowly and in a non-threatening manner, moderate the level of direct eye contact, remove distractions, demonstrate active listening skills, and provide sufficient avenues of retreat or escape should the situation become violent.

104.  DEFENDANT COUNTY and DOES 8-10, inclusive, were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

105.  The failure of DEFENDANT COUNTY and DOES 8-10, inclusive, to provide adequate training caused the deprivation of Mr. RABOT'S rights by DEFENDANT OFFICERS that is, DEFENDANT'S failure to train is so closely related to the deprivation of Mr. RABOT'S rights as to be the moving force that caused the ultimate injury.

106.  By reason of the aforementioned acts and omissions, Mr. RABOT suffered past and future pain and suffering, loss of enjoyment of life, and loss of life.

107.  Accordingly, DEFENDANT COUNTY and DOES 8-10, inclusive, are liable to PLAINTIFFS for compensatory damages under 42 U.S.C. § 1983.

108.  PLAINTIFFS bring this claim and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and

loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By PLAINTIFFS against COUNTY)

109.   PLAINTIFFS repeat and re-allege each and every allegation in paragraphs 1 through 108 of this Complaint with the same force and effect as if fully set forth herein.

110.   DEFENDANT OFFICERS were acting under color of state law and in the course and scope of their employment as law enforcement officers for the COUNTY.

111.   The acts of DEFENDANT OFFICERS deprived Mr. RABOT of his particular rights under the United States Constitution.

112.   Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

113.   Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of DEFENDANT OFFICERS ratified the DEFENDANT OFFICERS' acts and the bases for them.  Upon information and belief, the final policymaker knew of and specifically approved of DEFENDANT OFFICERS' acts.

114.   On information and belief, COUNTY final policymakers, including DOES 8-10, inclusive, knew that Mr. RABOT was not an immediate threat of death or serious bodily injury to any person at the time of the DEFENDANT OFFICERS' use of deadly force.

115.   On information and belief, the official policies with respect to the incident are that officers are not to use deadly force against an individual

unless the individual poses an immediate risk of death or serious bodily injury to the officers or others, or if the individual has inflicted death or serious bodily injury against someone or threatened to do so, the officers may use deadly force to prevent the individual's escape.  The officers' actions deviated from these official policies because Mr. RABOT did not pose an immediate threat of death or serious bodily injury to the involved officers or anyone.

116.   On information and belief, the COUNTY approved of the officers' actions after a hearing presented by the officers' legal counsel to DOES 8-10, inclusive, after which DOES 8-10, inclusive, found the officers' actions to be within the official policies of the COUNTY.  On information and belief, the basis for such approval was based on the officers' self-serving statements that they feared they would be killed or seriously injured, despite evidence to the contrary, including evidence that the involved officers were never physically injured.

117.   Upon information and belief, a final policymaker has determined (or will determine) that the acts of DEFENDANT OFFICERS were "within policy."

118.   By reason of the aforementioned acts and omissions, Mr. RABOT suffered past and future pain and suffering, loss of enjoyment of life, and loss of life.

119.   Accordingly, DEFENDANT COUNTY and DOES 8-10, inclusive, are liable to PLAINTIFFS' for compensatory damages under 42 U.S.C. § 1983.

120.   PLAINTIFFS bring this claim and seek survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.  Plaintiff also seek attorneys' fees and costs under this claim.

1

2

3

4

## NINTH CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(Plaintiff DONNELEY RABOT against DEFENDANT OFFICERS, and

COUNTY vicariously)

5      121.   Plaintiff repeats and re-alleges each and every allegation in

6   paragraphs 1 through 120 of this Complaint with the same force and effect as

7   if fully set forth herein.

8      122.   DEFENDANT OFFICERS, while working as officers for

9   Defendant COUNTY and acting within the course and scope of their duties,

10   intentionally deprived Plaintiff DONNELEY RABOT of his freedom of

11   movement by use of force, threats of force, menace, fraud, deceit, and

12   unreasonable duress.  DEFENDANT OFFICERS detained Plaintiff

13   DONNELEY RABOT without reasonable suspicion and arrested him without

14   probable cause.

15      123.   Plaintiff DONNELEY RABOT did not knowingly or voluntarily

16   consent.

17      124.   DEFENDANT OFFICERS detained Plaintiff DONNELEY

18   RABOT for an appreciable amount of time.

19      125.   The conduct of DEFENDANT OFFICERS was a substantial

20   factor in causing the harm to Plaintiff DONNELEY RABOT.

21      126.   Defendant COUNTY is vicariously liable for the wrongful acts

22   of DEFENDANT OFFICERS pursuant to section 815.2(a) of the California

23   Government Code, which provides that a public entity is liable for the

24   injuries caused by its employees within the scope of the employment if the

25   employee's act would subject him or her to liability.

26      127.   The conduct of DEFENDANT OFFICERS was malicious,

27   wanton, oppressive, and accomplished with a conscious disregard for the

28   rights of Plaintiff DONNELEY RABOT, entitling Plaintiff to an award of

1   exemplary and punitive damages.

2        128.   As a result of their misconduct, DEFENDANT OFFICERS are

3   liable for Plaintiff DONNELEY RABOT'S injuries, either because they were

4   integral participants in the wrongful detention and arrest, or because they

5   failed to intervene to prevent these violations.

6        129.   Plaintiff bring this claim indivudually, and seek damages.

7

8              **TENTH CLAIM FOR RELIEF**

9      **Battery (Cal. Govt. Code § 820 and California Common Law)**

10  (By PLAINTIFFS against DEFENDANT OFFICERS directly, and DEFENDANT

11               COUNTY vicariously)

12       130.   PLAINTIFFS repeat and re-allege each and every allegation of

13  paragraphs 1 through 129, inclusive, as if fully set forth herein.

14       131.   DEFENDANT OFFICERS while working as officers, deputies,

15  sergeants, and in other capacities, for the Los Angeles County Probation

16  Department, and acting within the course and scope of their duties,

17  intentionally shot Mr. RABOT multiple times in his own home.  As a result

18  of the actions of DEFENDANT OFFICERS, Mr. RABOT was seriously

19  injured and died.  DEFENDANT OFFICERS had no legal justification for

20  using force, including deadly force, against Mr. RABOT, and DEFENDANT

21  OFFICERS use of force while carrying out their duties as officers was an

22  unreasonable under the circumstances.

23       132.   At all relevant times, Mr. RABOT was not an immediate threat

24  of death or serious bodily injury to anyone, including DEFENDANT

25  OFFICERS, no warning was given that deadly force was going to be used

26  prior to the use of deadly force, and less than lethal alternatives were

27  available to DEFENDANT OFFICERS.

28       133.   DEFENDANT COUNTY is vicariously liable for the wrongful

1   acts of DEFENDANT OFFICERS pursuant to section 815.2 of the California

2   Government Code, which provides that a public entity is liable for injuries

3   caused by its employees within the scope of the employment is the

4   employees' acts would subject them to liability.

5       134.   The conduct of DEFENDANT OFFICERS was malicious,

6   wanton, oppressive, and accomplished with a conscious disregard for the

7   rights of Mr. RABOT, entitling PLAINTIFFS to an award of exemplary and

8   punitive damages.

9       135.   PLAINTIFFS seek survival, wrongful death and punitive

10   damages under this claim.

11

12                   **ELEVENTH CLAIM FOR RELIEF**

13       **Negligence (Cal. Govt. Code § 820 and California Common Law)**

14   (Wrongful Death by all PLAINTIFFS and Negligent Infliction of Emotional

15                 Distress by Plaintiff DONNELEY RABOT)

16   (By PLAINTIFFS against DEFENDANT OFFICERS directly, and DEFENDANT

17                 COUNTY vicariously)

18       136.   PLAINTIFFS repeat and re-allege each and every allegation of

19   paragraphs 1 through 135, inclusive, as if fully set forth herein.

20       137.   Peace officers, including DEFENDANT OFFICERS, have a duty

21   to use reasonable care to prevent harm and injury to others.  This duty

22   includes using appropriate tactics, giving appropriate commands, giving

23   appropriate warnings, use of de-escalation techniques, and not using any

24   force unless necessary, using the least amount of force necessary, and only

25   using deadly force as a last resort, and providing timely medical care for a

26   person the DEFENDANT OFFICERS intentionally harmed.  These duties

27   also include the DEFENDANT OFFICERS responsibility to follow their

28   training and policies, responsibility to ensure they are properly trained and

1  equipped to perform their duties in accordance with the department policies,

2  and properly investigate and report on their use of force incidents.

3      138.   The DEFENDANT OFFICERS breached their duty of care.

4  Upon information and belief, the actions and inactions of DEFENDANT

5  OFFICERS were negligent and reckless, including but not limited to:

6          (a)    the failure to properly and adequately assess the need to

7      use force against Mr. RABOT;

8          (b)    the negligent tactics and handling of the situation with Mr.

9      RABOT, including pre-shooting negligence and failure to utilize de-

10     escalation techniques;

11         (c)    the negligent scope and manner of the search, entry of

12     one's home, detention, arrest, and use of force, against Mr. RABOT;

13         (d)    the negligent scope and manner of the search, entry of

14     one's home, arrest and detention against PLAINTIFF DONNELEY;

15     and

16         (e)    the failure to intervene on other officers' use of excessive

17     and unreasonable force.

18     139.   As a direct and proximate result of DEFENDANT OFFICERS'

19  conduct as alleged above, and other undiscovered negligent conduct, Mr.

20  RABOT was caused to suffer severe past and future mental and physical pain

21  and suffering, loss of enjoyment of life, and loss of life.

22     140.   At all relevant times, Mr. RABOT was not an immediate threat

23  of death or serious bodily injury to anyone, no warning was given that

24  deadly force was going to be used prior to the use of deadly force, and less

25  than lethal alternatives were available to DEFENDANT OFFICERS.

26     141.   DEFENDANT COUNTY is vicariously liable for the wrongful

27  acts of DEFENDANT OFFICERS' pursuant to section 815.2(a) of the

28  California Government Code, which provides that a public entity is liable for

the injuries caused by its employees within the scope of the employment if the employees' act would subject him or her to liability.

142.  PLAINTIFFS seek wrongful death damages under this claim.

143.  The DEFENDANT OFFICERS negligently caused physical injury to Mr. RABOT when the DEFENDANT OFFICERS discharged their firearms at Mr. RABOT, striking him multiple times.  The use of force, including deadly force, by the DEFENDANT OFFICERS was excessive, unreasonable, and the DEFENDANT OFFICERS were negligent when they discharged their firearms at Mr. RABOT, including pre-shooting negligent conduct, actions, inactions, and tactics, and their post-shooting negligent conduct, actions and inactions.

144.  PLAINTIFF DONNELEY RABOT was present at the scene, which is the residence he shared with Mr. RABOT, when the DEFENDANT OFFICERS discharged their firearms at Mr. RABOT, and PLAINTIFF DONNELEY RABOT was aware that Mr. RABOT was being injured.

145.  As a result of having lethal force unreasonably fired at Mr. RABOT, and PLAINTIFF DONNELEY RABOT being present at the scene and seeing his father being shot repeatedly by the DEFENDANT OFFICERS, PLAINTIFF DONNELEY RABOT suffered severe emotional distress.  As a direct and proximate result of DEFENDANT OFFICERS' unreasonable detention of PLAINTIFF DONELLEY RABOT after the shooting, he further sustained emotional injuries.

146.  On information and belief, an ordinary reasonable person would be unable to cope with seeing their loved one shot repeatedly, especially at their own residence which they shared.

147.  Defendant COUNTY is vicariously liable for the wrongful acts of the DEFENDANT OFFICERS, pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for

1    the injuries caused by its employees within the course and scope of the

2    employment if the employee's act would subject him or her to liability.

3        148.   PLAINTIFF DONNELEY RABOT bring this claim individually

4    and seek damages for his severe emotional distress.

5        149.   PLAINTIFFS seek wrongful death and punitive damages under

6    this claim.

7

8                    **TWELFTH CLAIM FOR RELIEF**

9    **Violation of Cal. Civ. Code § 52.1 and California Common Law)**

10              (By PLAINTIFFS against all DEFENDANTS)

11       150.   PLAINTIFFS repeat and re-allege each and every allegation in

12   paragraphs 1 through 149 of this Complaint with the same force and effect as

13   if fully set forth herein.

14       151.   The Bane Act, the California Constitution and California

15   common law prohibit the use of excessive force by law enforcement.

16   California Civil Code, Section 52.1(b) authorizes a private right of action

17   and permits survival actions for such claims.  "[A] successful claim for

18   excessive force under the Fourth Amendment provides the basis for a

19   successful claim under § 52.1."  *Chaudhry v. City of Los Angeles*, 751 F.3d

20   1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012,

21   1022 (9th Cir. 2013) ("[T]he elements of the excessive force claim under §

22   52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217

23   Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by

24   unnecessary, deliberate and excessive force—is [] within the protection of

25   the Bane Act").

26       152.   DEFENDANT OFFICERS violated PLAINTIFFS and Mr.

27   RABOT'S Fourth Amendment rights to be free from unreasonable search

28   and seizures when they entered into their home, used excessive and

1  unreasonable force against Mr. RABOT, denied Mr. RABOT medical care,

2  and unreasonably detained Plaintiff DONNELEY RABOT.  DEFENDANTS

3  specifically intended to violate PLAINTIFFS and Mr. RABOT'S

4  constitutional rights as stated above, as demonstrated by DEFENDANTS'

5  reckless disregard for PLAINTIFFS and Mr. RABOT'S constitutional rights.

6  Thus, PLAINTIFFS can recover for violation of the Bane Act.  *See Reese v.*

7  *County of Sacramento*, 888 F.3d 1030, 1040-45 (2018).

8      153.  On October 22, 2019, DEFENDANTS unlawfully entered

9  PLAINTIFFS' residence, DEFENDANTS seized Mr. RABOT when

10  DEFENDANTS fired multiple gunshots at Mr. RABOT, striking him in

11  multiple places, DEFENDANTS failed to timely provide Mr. RABOT

12  medical care, and DEFENDANTS unreasonably detained Plaintiff

13  DONNELEY RABOT.  Within minutes of their arrival and unreasonable

14  entry in the back of PLAINTIFFS' house, DEFENDANTS shot Mr. RABOT,

15  DEFENDANTS issued no commands or warnings before they shot Mr.

16  RABOT, and DEFENDANTS made no efforts to de-escalate the situation

17  upon his arrival or formulate a tactical plan.  Then DEFENDANTS failed to

18  timely provide or failed to allow medical assistance for Mr. RABOT, and

19  took Plaintiff DONNELEY RABOT into custody, holding him for hours.

20      154.  At all times prior to the deployment of multiple gunshots fired at

21  Mr. RABOT, DEFENDANTS had access to cover; DEFENDANTS were not

22  at risk of immediate death or serious bodily injury based on Mr. RABOT'S

23  actions; DEFENDANTS had time to issue proper commands to Mr. RABOT;

24  DEFENDANTS had time to allow Mr. RABOT to comply with commands if

25  they were given; DEFENDANTS were armed with less-lethal force options;

26  it was feasible for DEFENDANTS to utilize those less-lethal force options;

27  there were several other reasonable alternatives to the use of deadly force

28  available to the DEFENDANTS; and DEFENDANTS failed to exhaust all

1    reasonable less-lethal force options.

2        155.   DEFENDANTS violated Mr. RABOT'S Constitutional right to

3    be free from excessive and unreasonable force by police officers.

4    DEFENDANTS intended to violate Mr. RABOT'S rights and/or acted with

5    reckless disregard with regard to Mr. RABOT'S Constitutional rights, which

6    is evidence that they intended to violate Mr. RABOT'S rights.

7        156.   Mr. RABOT was caused to suffer severe pain and suffering, loss

8    of enjoyment of life and loss of life.  The conduct of DEFENDANTS was a

9    substantial factor in causing the harm, losses, injuries, and damages of Mr.

10   RABOT.

11       157.   DEFENDANT COUNTY is vicariously liable for the wrongful

12   acts of DEFENDANT OFFICERS pursuant to section 815.2(a) of the

13   California Government Code, which provides that a public entity is liable for

14   the injuries caused by its employees within the scope of the employment if

15   the employee's acts would subject him or her to liability.

16       158.   The conduct of the individual DEFENDANTS was malicious,

17   wanton, oppressive, and accomplished with a conscious disregard for the

18   rights of PLAINTIFFS and Mr. RABOT in that PLAINTIFFS' and Mr.

19   RABOT's constitutional rights were intentionally deprived and violated,

20   and/or there was reckless disregard for constitutional rights of PLAINTIFFS

21   and Mr. RABOT.  As such, the aforementioned conduct entitles

22   PLAINTIFFS and Mr. RABOT to an award of exemplary and punitive

23   damages.

24       159.   PLAINTIFFS also seek costs and attorneys' fees.

25

26

27

28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs DONNELEY RABOT; DANELLE RABOT; DAPHNE RABOT; and DESIREE RABOT request entry of judgment in their favor against COUNTY OF LOS ANGELES, and DOES 1-10, inclusive, as follows:

1.  For compensatory damages according to proof at trial, under federal and state law;

2.  For punitive and exemplary damages against the individual defendants in an amount to be proven at trial;

3.  For statutory damages;

4.  For reasonable attorneys' fees including litigation expenses;

5.  For costs of suit and interest incurred herein; and

6.  For such other and further relief as the Court may deem just and proper.

Dated: November 19, 2020              LAW OFFICES OF DALE K. GALIPO


                              By:  _____*/s/ Dale K. Galipo*_____
                                   Dale K. Galipo
                                   Marcel F. Sincich
                                   Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby submit this demand that this action be tried in front of a jury.

Dated: November 19, 2020                    LAW OFFICES OF DALE K. GALIPO

By: _____
                                            */s/ Dale K. Galipo*
                                            Dale K. Galipo
                                            Marcel F. Sincich
                                            Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES